## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL HAMMOND, JOHN L. JONES, and RICK MONGER derivatively on behalf of ZION OIL & GAS, INC., | Case No.: _____ |
| Plaintiffs, | |
| v. | **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** |
| VICTOR G. CARRILLO, MICHAEL B. CROSWELL, JR., JOHN M. BROWN, DUSTIN L. GUINN, MARTIN M. VAN BRAUMAN, WILLIAM H. AVERY, LEE RUSSELL, FORREST A. GARB, KENT S. SIEGEL, PAUL OROIAN, JUSTIN W. FURNACE, GENE SCAMMAHORN, and RALPH F. DEVORE, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| -and- | |
| ZION OIL & GAS, INC., | |
| Nominal Defendant. | |

Plaintiffs Paul Hammond, John L. Jones, and Rick Monger (collectively, "Plaintiffs"), by and through their counsel, derivatively on behalf of nominal defendant Zion Oil & Gas, Inc. ("Zion" or the "Company"), submit this Verified Stockholder Derivative Complaint against the Individual Defendants (defined herein) and allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsels' investigation, which included, *inter alia*, review and analysis of: (i) regulatory filings made by Zion with the U.S. Securities and Exchange Commission ("SEC"); (ii) press releases issued and disseminated by Zion; (iii) a purported class action lawsuit filed in the United Stated District Court for the Northern

District of Texas against Zion and defendants Victor G. Carrillo ("Carrillo") and Michael B. Croswell, Jr. ("Croswell") alleging violations of the federal securities laws based on the alleged issuance of false and misleading statements of material fact, and the alleged omission of material facts necessary to make other issued statements not misleading, between March 12, 2018 and July 10, 2018, with respect to the whether the Company was being investigated by the SEC; and (iv) other publicly-available information, including media and analyst reports, concerning Zion.

## NATURE OF THE ACTION

1.      This is a stockholder derivative action asserting claims for breaches of fiduciary duty, unjust enrichment, and violations of Section 14(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and SEC Rule 14a-9 promulgated thereunder, brought on behalf of nominal defendant Zion against certain of its officers and members of the Company's Board of Directors (the "Board").

2.      Zion is a Delaware corporation with its headquarters in Dallas, Texas.   The Company was founded in 2000 for the alleged purpose of discovering oil and natural gas reserves in Israel.   Zion's 2017 Form 10-K, filed with the SEC on March 12, 2018, declares its mission statement as follows:

> Zion's vision, as guided by John Brown, of finding oil and/or natural gas in Israel, is biblically inspired.   The vision is based, in part, on biblical references alluding to the presence of oil and/or gas in territories within the State of Israel that were formerly within certain ancient biblical tribal areas.

3.      After nearly two decades of oil exploration, the Company's mission has been entirely unsuccessful.   Zion has drilled at least five oil holes in Israel, all of which have failed to produce a drop of oil.   Consequently, Zion has not generated a single dollar in oil revenue and its operations have cost investors over $170 million.   Zion does not have any revenues or operating

income and the Company currently holds only one active petroleum exploration license in Israel, which has yet to produce any oil or natural gas.

4.      Since at least March 26, 2018, Zion has been under investigation by the SEC (the "SEC Investigation").  From March 12, 2018 to July 11, 2018 (the "Relevant Period"), the Individual Defendants have made and/or caused the Company to make a series of false and misleading statements to stockholders and the investing public unambiguously denying the existence of the SEC Investigation.

5.      After carrying on the charade for over three months, the Individual Defendants finally allowed the Company to admit that it was being investigated by the SEC on a Form 8-K filed with the SEC on July 11, 2018.  The Form 8-K also admitted that the Company had received a subpoena as part of the SEC Investigation.  On this news, Zion stock dropped $0.44 per share, or 11%, to $3.56 per share on July 12, 2018, wiping out over $26 million in market capitalization. The Company's market capitalization has only continued to drop since Zion confirmed the ongoing SEC Investigation, decreasing by over $160.77 million since July 11, 2018.

6.      In addition to the gravity of the SEC Investigation itself, the alleged misstatements and omissions have subjected the Company and defendants Carrillo and Croswell to a securities fraud class action, captioned *Peak v. Zion Oil & Gas, Inc., et al.*, Case No. 3:18-cv-02067, pending in the United States District Court for the Northern District of Texas (the "Securities Class Action").

7.      Additional damages to the Company include the over-compensation of the Individual Defendants due to the misstatements described herein.

8.      Throughout the Relevant Period, the Individual Defendants breached their fiduciary duties by causing Zion to fail to maintain internal controls and to make materially false and/or

misleading statements, as well as to fail to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Individual Defendants caused the Company to fail to disclose that:  (1) the Individual Defendants were aware that the Company was the subject of an SEC investigation; (2) the Company failed to maintain adequate internal controls; and (3) as a result of the foregoing, the Company's statements about Zion's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

9.      The Individual Defendants breached their fiduciary duties of loyalty, good faith, due care, oversight, and candor by willfully engaging in the deceptions alleged herein.  In addition, the Individual Defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 by soliciting Zion stockholder votes for, *inter alia*, director re-election and the ratification of the Company's independent auditor, while simultaneously misrepresenting and/or failing to disclose the truth regarding the SEC Investigation.

10.     As a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, Zion has sustained damages as described below.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint alleges a claim for violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9.  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or controversy.  This action is not a collusive action designed to confer jurisdiction on a Court of the United States that it would not otherwise have.

12.     This Court has jurisdiction over each defendant because they reside in this District or have sufficient minimum contacts with this District to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.  The Court has

personal jurisdiction over nominal defendant Zion because it is authorized to do business in this state, has consented to service in this state, and is incorporated in this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more of the defendants either resides in or maintains offices in this District, a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein and violation of fiduciary duties owed to Zion occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

14.     Plaintiffs are stockholders of Zion, were stockholders of Zion at the time of the wrongdoing alleged herein, and have been stockholders of Zion continuously since that time.

15.     Nominal defendant Zion is a Delaware corporation with its principal executive offices located at 12655 North Central Expressway, Suite 1000, Dallas, Texas 75243.  Zion's common stock trades on the NASDAQ Global Market under the ticker symbol "ZN."

16.     Defendant Carrillo was Zion's Chief Executive Officer ("CEO") from June 15, 2015 to September 1, 2018.  He was a member of the Board from September 2010 to September 1, 2018.  He received $448,542 in total compensation from the Company in 2017, up to $198,542 of which may have been incentive based.  Upon his resignation, Carrillo addressed employees:

> I believe that God led me to Zion and that it was a part of my mission to help guide the company to drill this key, deep well.  That goal having now been accomplished, it is time for me to move on to pursue other personal interests, effective September 1, 2018.

17.     Defendant Croswell has been the Company's Chief Financial Officer ("CFO") since August 2016 and a member of the Board since May 2017.  He received $264,749 in total compensation from the Company, up to $214,749 of which may have been incentive based.

18.    Defendant John M. Brown ("Brown") founded the Company in 2000 and has been the Chairman of the Board since inception.  After the Company's founding, Brown served as CEO until September 2004 and as President until October 2001.  In January 2010, Brown was appointed Executive Chairman, and in October 2012, Brown was appointed as the Interim Chief Executive Officer ("CEO").  On January 1, 2014, Brown was appointed as CEO but stepped down from that role effective June 15, 2015.  It was Brown's "vision" to drill for oil in certain areas of Israel based on bible passages.  He owns 1.9% of the Company's common stock and received $632,419 in total compensation from the Company in 2017, up to $383,419 of which may have been incentive based.

19.    Defendant Dustin L. Guinn ("Guinn") has been Zion's Executive Vice Chairman since July 2016, President and Chief Operating Officer ("COO") since September 2016, and CEO since August 31, 2018.  After it was announced that Guinn would be CEO, defendant Brown sent an email to the Company's employees stating, "God has chosen Zion's New CEO."  Guinn has also been a member of the Board since May 2015.  Guinn received $465,647 in total compensation from the Company in 2017, up to $215,647 of which may have been incentive based.

20.    Defendant Martin M. van Brauman ("van Brauman") has been a member of the Board since April 2014.  He has also been Zion's Corporate Secretary and Treasurer since January 2012 and a Senior Vice President since June 2013.  van Brauman received $391,375 in total compensation in 2017, up to $373,375 of which may have been incentive based.

21.    Defendant William H. Avery ("Avery") has been a member of the Board since September 2013 and has also been Zion's General Counsel on a part time basis under an independent consulting contract since December 2012.  He received $323,687 in total compensation in 2017, up to $304,687 of which may have been incentive based.

22.     Defendant Lee Russell ("Russell") has been a member of the Board since May 2017 and has been an independent Geoscience Consultant for Zion since August 2012.  He received $253,638 in total compensation in 2017, up to $241,638 of which may have been incentive based.

23.     Defendant Forrest A. Garb ("Garb") has been a member of the Board since November 2005 and is Chairman of the Compensation Committee.

24.     Defendant Kent S. Siegel ("Siegel") has been a member of the Board since January 2013 and is a member of the Audit Committee and Compensation Committee.

25.     Defendant Paul Oroian ("Oroian") has been a member of the Board since since November 2003.  He is also Chairman of the Audit Committee and a member of the Nominating and Corporate Governance Committee.

26.     Defendant Justin W. Furnace ("Furnace") was a member of the Board from April 2012 until his resignation on August 13, 2018.  Furnace previously served as Chairman of the Nominating and Corporate Governance Committee and was a member of the Compensation Committee.

27.     Defendant Gene Scammahorn ("Scammahorn") has been a member of the Board since October 2012 and is a member of the Nominating and Corporate Governance Committee and Audit Committee.

28.     Defendant Ralph F. DeVore ("DeVore") was a member of the Board from April 2018 to June 2018.

29.     Defendants Carrillo, Croswell, Brown, Guinn, van Brauman, Avery, Russell, Garb, Siegel, Oroian, Furnace, Scammahorn, and DeVore are collectively referred to herein as the "Individual Defendants."

Case 1:18-cv-01846-RGA  Document 1  Filed 11/21/18  Page 8 of 39 PageID #: 8

**DUTIES OF THE INDIVIDUAL DEFENDANTS**

30.     By reason of their positions as officers and/or directors of Zion and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed and owe the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

31.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

32.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of Zion were required to, among other things:

        a.      Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

        b.      Conduct the affairs of the Company in a lawful, efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c.    Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

d.    Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

e.    Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

33.    Each of the Individual Defendants, as a director and/or officer, owed to the Company and its stockholders the fiduciary duties of loyalty, good faith, and candor in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a conscious disregard for their duties to the Company and its stockholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

34.    The Company has also adopted a Code of Business Conduct and Ethics for Directors, Officers and Employees (the "Code").  The Code states that:

> The Company requires its directors, officers and employees to observe the highest standards of business and personal ethics in the discharge of their assigned responsibilities.  They must behave honestly and with integrity at all times, including in dealings with co-workers, the public, the business community,

stockholders, customers, suppliers and governmental and regulatory authorities. They must comply with all applicable legal requirements, avoid any questionable relationships with persons or firms with whom the Company transacts or is likely to transact business, avoid disclosure to others of confidential information obtained in the course of their employment by the Company, and avoid situations which may place them in a conflict of interest situation to the possible detriment of themselves and/or the Company.

35.    The Code sets forth the Audit Committee's responsibilities as follows:

The Audit Committee is responsible for monitoring compliance with the Code and for serving as a resource to directors, officers and employees by providing information and guidance regarding issues of compliance and ethical conduct.  The Chairman of the Audit Committee is the Code Administrator and is the appropriate person for the reporting of violations of the Code of Business Conduct and Ethics.

Directors, officers and employees should feel free to discuss questions and issues arising under the Code or otherwise raising ethical or legal compliance concerns with the Audit Committee.

36.    The Code also requires the following with regard to public reporting:

The Company requires honest and accurate recording and reporting of information in order to make responsible business decisions and to meet its obligations to make full, fair, timely, accurate and understandable disclosure in the reports that it files with the U.S. Securities and Exchange Commission (the "SEC") and in other public communications.

*        *        *

It is the Company's policy that the reports it files with the SEC and all other public communications will be full, fair, accurate, timely and understandable.   The Company expects all personnel to take this responsibility very seriously, to provide prompt and accurate answers to inquiries related to the Company's public disclosure requirements, and to bring to the attention of their supervisors (a) any material information of which they become aware that affects the disclosures made by the Company and (b) any information they may have concerning significant deficiencies in the design or operation of the Company's internal controls which could adversely affect the Company's ability to record, process, summarize and report financial data.

Depending upon their positions with the Company, certain individuals may be called upon to assure that the Company's filings are complete, fair and understandable.  To this end, such individuals shall:

- Comply, and, to the extent applicable, cause those under their supervision to comply, fully at all times with the Company's disclosure controls and procedures; and

- Ensure that all reports and disclosures they prepare or review, in whole or in part, are true and correct in all material respects and do not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

37.    With regard to compliance with the law, the Code states:

Obeying the law, both in letter and in spirit, is paramount to the conduct of the Company's business.  Directors, officers and employees must comply, and, to the extent applicable, ensure that employees under their supervision comply, with the laws, rules and regulations of each city, state and country in which the Company does business.

While the Company does not expect that all personnel will know the details of all of these laws, it requires that they have a general understanding of the laws applicable to their specific job responsibilities so as to enable them to determine when to seek advice from supervisors, managers or other appropriate individuals.

To ensure that the Company's operations are conducted in compliance with all applicable governmental regulations, directors, officers and employees must avoid activities that could involve or lead to involvement of the Company or its personnel in any unlawful practice.

For example, among other things, they must not, and, to the extent applicable, must not permit the employees under their supervision to:

- Take any unlawful or improper actions on the Company's behalf (e.g., engage in conduct that is intended to mislead, manipulate or take unfair advantage of a collaborator or agree with representatives of competing companies to engage in price fixing or other illegal activities);

- Use the assets of the Company for any unlawful or improper purpose; or

- Directly or indirectly promise, offer or make payment in money or anything of value to anyone, including a government official, agent or employee of a government, political party, labor organization or business entity or a candidate of a political party, with the intent to induce favorable business treatment or to improperly affect business or government decisions.

38.     With regard to the Board and its various committees' duties, the Company's definitive proxy statement filed on Form DEF 14A with the SEC on April 13, 2018 (the "2018 Proxy") notes the following:

> Management is responsible for the day-to-day management of risks the Company faces, while the Board of Directors, as a whole and through its committees, has the ultimate responsibility for the oversight of risk management.  Senior officers attend meetings of the Board, provide presentations on operations including significant risks, and are available to address any questions or concerns raised by the Board. Additionally, our three Board committees assist the Board in fulfilling its oversight responsibilities in certain areas of risk.  Pursuant to its charter, the Audit Committee coordinates the Boards' oversight of the Company's internal control over financial reporting, disclosure controls and procedures and code of conduct.  Management regularly reports to the Audit Committee on these areas.  The Compensation Committee assists the Board in fulfilling its oversight responsibilities with respect to the management of risks arising from our compensation policies and programs. The Nominating and Corporate Governance Committee assists the Board in fulfilling its oversight responsibilities with respect to the management of risks associated with Board organization, membership and structure, succession planning for our directors and corporate governance.  When any committees receives a report related to material risk oversight, the Chairman of the relevant committee reports on the discussion to the full Board.

39.     The Individual Defendants failed to maintain the standards laid out by the law and the Company itself, resulting in the breaches of fiduciary duty and the violations of Section 14(a) and Rule 14a-9 described herein.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

40.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants caused the Company to conceal the truth and further aided and abetted and assisted each other in breaching their respective duties.

41.     The purpose and effect of the conspiracy, common enterprise, and common course of conduct was, among other things, to:  (i) facilitate and disguise the Individual Defendants'

violations of law, including breaches of fiduciary duty and violations of Sections 14(a) of the Exchange Act and Rule 14a-9; (ii) conceal adverse information concerning the Company's operations, financial condition, future business prospects, and internal controls; and (iii) to artificially inflate the Company's stock price.

42.     The Individual Defendants accomplished their conspiracy, common enterprise, and common course of conduct by causing the Company purposefully, or recklessly, to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.  The actions described herein occurred under the authority of the Board, thus each of the Individual Defendants who are directors of Zion was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and common course of conduct complained of herein.

43.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of wrongdoing, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was or should have been aware of his overall contribution to and furtherance of the wrongdoing.

44.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Zion and was at all times acting within the course and scope of such agency.

## SUBSTANTIVE ALLEGATIONS

### A.     Background

45.     Zion was founded in 2000 by defendant Brown in accordance with his vision to support the political and economic independence of Israel by providing the country with oil and gas.  The Company's website spells out Brown's vision (the "Vision"), as follows:

**The Vision and the Calling**

**From John Brown, Zion Oil & Gas, Inc., Founder & Chairman**

When first visiting Israel in 1983, I believe that God gave me a scripture (1 Kings 8:41-43), a vision (Oil for Israel) and, as a Christian Zionist and New Covenant believer (Isaiah 65:1), the calling to render assistance to the Jewish people and Nation of Israel, and to aid them in the Restoration of the Land by providing the oil and gas necessary to help the People of Israel maintain their political and economic independence (Leviticus 19:33,34 & Exodus 6:6-8).

In the Bible, God sovereignly declares that Israel is His chosen people (Exodus 4:22); and we can gain some understanding of God's choice, His vision and purpose by reading Deuteronomy 7.

As a Christian Zionist, I declare, ". . . thy people shall be my people, and thy God my God" (Ruth 1:16).  And I believe that, as true Christians, we must all so identify with Israel, as we are all part of the "wild olive branch" grafted onto the olive tree by the grace of God (Romans 11).

But as the Bible declares, God **has not** forsaken His covenant people (Jeremiah 31:31-40); and, as new covenant believers we are commanded by God in the Bible to stand together with the Jewish people whom the world has abused.

Fulfillment of prophecy is for the Jewish people – for them is the realization of their covenant and for them is the answer to their prayers of countless generations:

"And I will plant them upon their land, and they shall no more be pulled up out of their land which I have given them, saith the Lord thy God."  (Amos 9:14-15).

(Emphasis in original).

46.     Brown's Vision is also illustrated on the Company website with the following map:



47.     The Company's operations carried out pursuant to Brown's Vision have been a complete failure.  Zion has conducted oil and gas exploration in Israel for over eighteen years without discovering any oil or gas reserves.  Consequently, the Company has not earned any revenue from its oil and gas operations, which have cost its investors over $170 million.

48.     In addition to its substandard business plan and failure to generate a single penny of revenue in an eighteen-year period, Zion's officers and directors have demonstrated questionable business judgement with respect to the businesses with which the Company has partnered.

49.     Zion's drilling partner in Israel is an Israeli subsidiary of the Romanian Company, Dafora Meidas SA ("Dafora").  Dafora has experienced a number of issues over the past two years.

For example, in 2015, Dafora paid nearly one million euros to the Romanian government in connection with its involvement in a bid-rigging scheme and soon after its trading was suspended on June 19, 2015 when the company filed for bankruptcy after failing to pay off its substantial debt.  Dafora's trading remained suspended until September 25, 2017.

50.     Zion's   auditor   throughout   the   Relevant   Period,   MaloneBailey   LLP ("MaloneBailey"), is a little-known accounting firm that was previously subject to a cease and desist order by the SEC for violations of applicable professional standards constituting improper professional conduct in connection with its audit of a religious-themed videogame company that was engaged in a series of circular sham transactions.  MaloneBailey resigned as Zion's auditor on October 3, 2018, and was replaced by RBSM LLP, an accounting firm that has been previously criticized by the Public Company Accounting Oversight Board for producing deficient audits.

51.     The Individual Defendants have also caused the Company to maintain inadequate internal controls.  These failures have subjected the Company to the SEC Investigation and caused the Company to issue misstatements concealing the SEC Investigation.

**B.     The Individual Defendants Publicly Deny the SEC Investigation**

52.     On March 26, 2018, Twitter user @FuzzyPandaShort ("Fuzzy Panda") tweeted: "$ZN – Zion has an Undisclosed SEC Investigation.  Records are being withheld that could be used for law enforcement purposes."  Fuzzy Panda also attached an excerpt from a purported letter from the SEC replying to a Freedom of Information Act ("FOIA") request for "all documents in possession of SEC that pertain to investigations regarding Zion Oil & Gas (ZN) for the time period January 1, 2017 through March 1, 2018."  The letter also noted that the SEC was "withholding records that may be responsive to your request under 5 U.S.C. § 552(b)(7)(A), 17 CFR § 200.80(b)(7)(i).  This exemption protects from disclosure records compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement

activities."   The letter also stated that "[i]t is the general policy of the [SEC] to conduct its

investigations on a non-public basis."

53.     Fuzzy Panda's tweet also included the following image of the letter:



## C.     The Individual Defendants Cause Zion to Issue a Series of Materially False and Misleading Statements

54.     The day after Fuzzy Panda's tweet, on March 27, 2018, the Individual Defendants

caused Zion's corporate Twitter account – @zionoil – to tweet a reply to Fuzzy Panda that stated,

"There is no SEC investigation.   Merely indicators of a routine FINRA questionnaire that's standard after a steep rise of our stock recently."

55.    Fuzzy Panda responded with the following question for Zion:



56.    Rather than responding to this direct question to either clarify or correct Zion's earlier tweet that, "There is no SEC investigation," the Individual Defendants caused Zion to reinforce its original denial.  Specifically, in addition to the direct denial of the SEC Investigation, the Individual Defendants also caused the Company to state in SEC filings that it was not subject to any ongoing investigations or prosecutions.

57.    Just two weeks prior, on March 12, 2018, the Individual Defendants caused the Company to file its 2017 annual report on Form 10-K with the SEC (the "2017 10-K").  The 2017 10-K was signed by defendants Carrillo, Croswell, Brown, Guinn, Avery, van Brauman, Oroian, Garb, Siegel, Scammahorn, Furnace, and Russell and was certified pursuant to Rule 13a-14(a) and

15d- 14(a) under the Exchange Act and the Sarbanes-Oxley Act of 2002 ("SOX") by defendants

Carrillo and Croswell.  The 2017 10-K included a blanket disclaimer of any claims, actions, or

proceedings against the Company and failed to mention the SEC Investigation:

> From time to time, the Company may be subject to routine litigation, claims, or
> disputes in the ordinary course of business.  The Company defends itself vigorously
> in all such matters. In the opinion of management, no pending or known threatened
> claims, actions or proceedings against the Company are expected to have a material
> adverse effect on its financial position, results of operations or cash flows.
> However, the Company cannot predict with certainty the outcome or effect of any
> such litigation or investigatory matters or any other pending litigation or claims.
> There can be no assurance as to the ultimate outcome of any such lawsuits and
> investigations.

58.     On April 13, 2018, a report was published by *Probes Reporter* concerning the SEC

Investigation.  *Probes Reporter* reported that it previously sent a FOIA request to the SEC and

received what it initially thought was a response conflicting with that received by Fuzzy Panda:

> In a letter dated 06-Apr-2018, the SEC gave us a response to suggest the absence
> of recent SEC investigative activity at Zion Oil & Gas, Inc.  This new information
> is contrary to a posting made to Twitter on 26-Mar-2018, by someone unknown to
> us [FuzzyPandaShort].  We now have conflicting FOIA responses, on the same
> company, received only weeks apart.
>
> *                *                *
>
> To us we simply have two conflict data points that require further work.  Until that
> work is complete, there remains a cloud of uncertainty regarding the data.  We have
> already filed an administrative appeal, the results of which should give us better
> answers.  We will follow up when we learn more.

59.     On May 8, 2018, the Individual Defendants caused the Company to file its quarterly

report for the first quarter of 2018 on Form 10-Q with the SEC.  The Form 10-Q was signed and

certified pursuant to SOX by defendants Carrillo and Croswell and featured the same blanket

disclaimer of any claims, actions, or proceedings against the Company and failed to mention the

SEC Investigation.

60. Then, on May 30, 2018, *Probes Reporter* published a report following up on their previous concerns of contradictory responses from the SEC regarding an investigation of Zion. The report revealed that the SEC was in fact investigating Zion, stating in relevant part:

> In a letter dated 06-Apr-2018, the SEC gave us a response to suggest the absence of recent SEC investigative activity at Zion Oil & Gas, Inc.  With conflicting FOIA responses on the same company, received only weeks apart, and the company having issued a public denial, we decided it was prudent to publish the data provided to us.  We did so, on 13-Apr-2018.  Now, in an appeal response dated 15-May-2018, on-going SEC enforcement proceedings were confirmed at Zion Oil & Gas, Inc.  This has not been disclosed.
>
> **Our Take:**  An appeal response is the gold standard when it comes to SEC FOIA responses.  In this case the appeal confirmed on-going enforcement proceedings.  The problem for Zion Oil & Gas is they flatly denied it back in March.  We're going with the SEC on this one.

61. The *Probes Reporter*'s article clearly notified Zion stockholders and the investing public that the SEC had confirmed an on-going investigation of Zion.  The *Probes Reporter* article noted that Zion's flat denial in March was problematic, however, the Individual Defendants caused the Company to continue to deny the SEC Investigation.

62. For example, on May 31, 2018, the Individual Defendants caused Zion to tweet, "There is no SEC investigation into Zion Oil & Gas, Inc.  The image you might see dated March 20 is a standard reply if you inquire about any company from the SEC.  Just ignore such distortions. $zn"

63.     Later that day, the Company also tweeted:



64.     These tweets directly denied the SEC Investigation which had been confirmed independently by both Fuzzy Panda and *Probes Reporter*.  The Individual Defendants caused or allowed the Company to disseminate these tweets with the knowledge that they were false and misleading.

65.     On June 11, 2018, defendant Carrillo was quoted in a *Financial Times* article titled "Zion Oil Living on a Prayer."  Carrillo continued to deny the existence of the SEC Investigation, stating:

> We are unaware of any SEC investigation of Zion Oil & Gas and we believe that false and malicious rumors are being spread by short-sellers interested in making a buck by seeing the stock price drop precipitously.

66.     The above statements were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Individual Defendants caused the Company to fail to disclose that:  (1) they were aware that the Company was the subject of the SEC Investigation; (2) the Company failed to maintain adequate internal controls; and (3) as a result of the foregoing, the Company's statements about Zion's

business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

**D.     The Individual Defendants Cause Zion to Issue a Materially False and Misleading Proxy Statement**

67.     In addition to the above false and misleading statements issued and/or caused to be issued by the Individual Defendants, the Individual Defendants also caused the Company to issue a false and misleading proxy statement, which sought stockholder votes for, *inter alia*, director re-election and the ratification of MaloneBailey as the Company's independent registered public accounting firm.

68.     On April 13, 2018, the Individual Defendants caused the Company to file the 2018 Proxy with the SEC.  The 2018 Proxy was disseminated to stockholders in connection with the Company's annual stockholder meeting.  The Individual Defendants drafted, approved, reviewed, and/or signed the 2018 Proxy before it was filed with the SEC and disseminated to Zion's stockholders.  The Individual Defendants knew, or were deliberately reckless in not knowing, that the 2018 Proxy was likewise materially false and misleading.

69.     Among other things, the 2018 Proxy provided information about and solicited stockholder votes for the director nominees up for election, defendants Brown, Garb, Siegel, and Croswell.  In addition, the 2018 Proxy described director responsibilities; the duties of each Board committee; Board risk assessment and management; and explicitly referenced the Code, which includes special ethical obligations regarding financial reporting such that all SEC filings are to be accurate.  The 2018 Proxy also sought stockholder ratification of MaloneBailey as the Company's independent registered public accounting firm for the year ended December 31, 2018.

70.     The 2018 Proxy was false and misleading because the Individual Defendants were aware, but failed to disclose that:  (1) they were aware that the Company was the subject of the

SEC investigation; (2) the Company failed to maintain adequate internal controls; and (3) as a result of the foregoing, the Company's statements about Zion's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

**E.     The Truth is Revealed**

71.     The Company continued to deny the SEC Investigation for as long as possible, even after it was confirmed by two independent sources.

72.     Finally, on July 11, 2018, the Individual Defendants caused the Company to file a Form 8-K with the SEC announcing that the SEC Investigation was occurring and that it had received a subpoena from the SEC to produce documents as part of the SEC's "non-public, fact-finding inquiry into the Company."  The Form 8-K stated:

> On Thursday, June 21, 2018, Zion Oil & Gas, Inc. ("Zion" or "Company") received a subpoena to produce documents from the Fort Worth office of the Securities and Exchange Commission ("SEC"), informing Zion of the existence of a non-public, fact-finding inquiry into the Company. Zion, an SEC-reporting company with audited financial statements in the US and Israel for over a decade, will fully cooperate with this investigation.  Until receipt of the subpoena on June 21, 2018, Zion had no previous communication with the SEC on this issue and was unaware of this investigation.  The SEC stated that "the investigation and the subpoena do not mean that we have concluded that [Zion] or anyone else has violated the law."

> While we acknowledge that our response to the subpoena will necessarily entail significant costs and management's attention, it should have no effect on Zion's ongoing testing procedures on its Megiddo-Jezreel #1 well.  The Company does not intend to comment further on this matter unless in the Company's judgment, it merits further comment or public disclosure.

73.     On this news, Zion's stock price fell $0.44 per share, or 11%, representing a decline of over $26 million in market capitalization.  The Company's stock price has continued to drop since it admitted the SEC Investigation was ongoing and as of November 1, 2018, the Company's market capitalization had declined over 69%.

74.     On August 31, 2018, defendant Carrillo resigned as CEO of the Company without providing an explanation.

**F.      Executives Continue to Reap Benefits Despite Zion's Precarious Financial State**

75.      On November 8, 2018, the Company filed its quarterly report for the period ended September 30, 2018 on Form 10-Q with the SEC.  In addressing its ability to continue as a going concern, the Company stated:

> The recoverability of the costs incurred to date is uncertain and dependent upon achieving significant commercial production [and] the Company's ability to continue as a going concern is dependent upon obtaining the necessary financing to undertake further exploration and development activities and ultimately generating profitable operations from its oil and natural gas interests in the future.
>
> *      *      *
>
> Since we have limited capital resources, no revenue to date and a loss from operations, our financial statements have been prepared on a going concern basis. . . there is substantial doubt about our ability to continue as a going concern.

76.      Zion currently has an accumulated deficit approaching $168 million, it incurred a net loss of approximately $6.7 million during the first three quarters of 2018, and has yet to earn any revenue from its operations.  According to the Form 10-Q, the Company has no economically recoverable reserves and no amortization base.

77.      Despite the Company's lack of revenue and significant deficit, between 2015 and 2017, defendant Brown, in his role as Executive Chairman, received over $1.62 million in compensation and defendant Carrillo received more than $1.4 million.  Between 2016 and 2017, defendant Guinn received $790,000 and defendant Croswell received $601,618.

## DAMAGES TO ZION

78.      As a result of the Individual Defendants' wrongful conduct described herein, Zion disseminated false and misleading statements and omitted material information that would have rendered the statements neither false nor misleading.  The improper statements have devastated the Company's credibility.  Zion has been, and will continue to be, severely damaged by the Individual Defendants' misconduct.

79. Indeed, the Individual Defendants' false and misleading statements as alleged herein have subjected Zion to the Securities Class Action pending in the United States District Court for the Northern District of Texas. The allegations in the Securities Class Actions are incorporated by reference as if fully set forth herein.

80. Due to the Individual Defendants' false and misleading statements, Zion has and will continue to incur expenditures associated with, among other things, defending the Securities Class Action and excessive compensation paid to several of the Individual Defendants.

81. As a direct and proximate result of the Individual Defendants' actions as alleged herein, Zion's market capitalization has been substantially damaged, losing millions of dollars in value.

82. Additionally, as a result of the materially misleading 2018 Proxy, defendants Brown, Garb, Siegel, and Croswell were all elected to new three-year terms as directors. These Individual Defendants, who caused the damages to the Company described herein, were given renewed power as a result of their false and misleading statements.

83. The Company will also be forced to pay costs associated with responding to the SEC's subpoena and complying with the SEC Investigation.

84. Moreover, these actions have irreparably damaged Zion's corporate image and goodwill. For at least the foreseeable future, Zion will suffer from what is known as the "liar's discount," a term applied to the stocks of companies that have been implicated in illegal behavior and have misled the investing public, such that Zion's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## PLAINTIFFS' DEMAND AND DERIVATIVE ALLEGATIONS

85. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

86.     Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

87.     Plaintiffs currently own Zion common stock and continuously owned Zion common stock during the Relevant Period.

88.     Plaintiffs will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights.

89.     As a result of the facts set forth herein, Plaintiffs have not made any demand on the Zion Board to institute this action against the Individual Defendants.  Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

90.     At the time this action was commenced, the Board consisted of twelve directors: defendants Brown, van Brauman, Croswell, Guinn, Avery, Russell, Oroian, Siegel, Garb, and Scammahorn (the "Director Defendants"), and newly-appointed, non-party directors John T. Seery and Virginia Prodan.  All ten Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

A.     **Defendants Brown, van Brauman, Croswell, Guinn, Avery, Russell, Oroian, Siegel, Garb, and Scammahorn Each Face a Substantial Likelihood of Liability**

91.     The Director Defendants all face a substantial likelihood of liability for their individual misconduct.  The Director Defendants were directors throughout the time of the false and misleading statements, and as such had a fiduciary duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations on behalf of the Company concerning its business, operations, prospects, internal controls, and financial statements were accurate.

92.     Moreover, the Director Defendants, as directors, owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.   Instead, they knowingly and consciously reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially-inflated prices.

93.     The Director Defendants knowingly made or authorized false and misleading statements, failed to timely correct such statements, failed to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and were being implemented effectively), and failed to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence.   The Director Defendants also signed the materially false and misleading 2017 10-K.   These actions constitute breaches of the fiduciary duties of loyalty and good faith for which the Director Defendants face a substantial likelihood of liability.   If the Director Defendants were to bring a suit on behalf of Zion to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability.   This is something they will not do.   For this reason, demand is futile as to the Director Defendants.

**B.      Defendant Croswell Lacks Independence and is Not Disinterested**

94.      As an initial matter, Zion has conceded in its SEC filings that Croswell is not an independent director of the Company.  The 2018 Proxy states that Croswell is not independent under the applicable SEC rules and regulations and the Nasdaq Stock Market listing requirements and rules.

95.      In addition to this lack of independence, Croswell is not disinterested for purposes of demand futility because his principal occupation is CFO and director of Zion.  According to the Company's SEC filings, in 2017, Croswell received total compensation of $364,749.  This amount is material to him.  Croswell also holds Zion stock that was worth $1.9 million prior to the stock drop and had an interest in keeping the SEC Investigation a secret to attempt to inflate that stock's value.  Further, he was reelected to the Board based on the false and misleading 2018 Proxy. Croswell is incapable of considering a demand to commence and vigorously prosecute this action because he faces additional substantial likelihood of liability as he is a named defendant in the Securities Class Action.

96.      For these reasons, demand upon defendant Croswell is futile.

**C.      Defendant Brown Lacks Independence and is Not Disinterested**

97.      As an initial matter, Zion has conceded in its SEC filings that Brown is not an independent director of the Company.  The 2018 Proxy states that Brown is not independent under the applicable SEC rules and regulations and the Nasdaq Stock Market listing requirements and rules.

98.      In addition to this lack of independence, Brown is not disinterested for purposes of demand futility because his principal occupation is Chairman of the Board.  According to the Company's SEC filings, in 2017, Brown received total compensation of $632,419.  This amount is material to him.  Brown also holds Zion stock that was worth over $5 million prior to the stock

drop and had an interest in keeping the SEC Investigation a secret to attempt to inflate that stock's value.  Further, he was reelected to the Board based on the false and misleading 2018 Proxy.

99.     Most importantly, Zion's entire corporate strategy is based on Brown's Vision of bible passages telling him where to drill for oil and/or natural gas.  Following this Vision, Zion has yet to earn any revenue from oil in its eighteen years of existence.  As the figurehead behind the Company, demand upon defendant Brown is futile.

**D.     Defendant Guinn Lacks Independence and is Not Disinterested**

100.     Like Croswell, Guinn is also a Zion executive in addition to serving as a director. Guinn has been Executive Vice Chairman since July 2016, and President and COO since September 2016.  He also became CEO on August 31, 2018, after Carrillo's resignation.  He was chosen as the replacement by Brown, who penned an email stating, "God has chosen Zion's New CEO."  For this reason, Guinn is indebted to Brown and could not disinterestedly consider a demand upon him or any one else who was placed on the Board as part of Brown's Vision.

101.     Additionally, Zion has conceded in its SEC filings that Guinn is not an independent director of the Company.  The 2018 Proxy states that Guinn is not independent under the applicable SEC rules and regulations and the Nasdaq Stock Market listing requirements and rules.

102.     Prior to the stock drop, Guinn owned over $1.5 million worth of Zion common stock and had an interest in keeping the SEC Investigation a secret to attempt to inflate that stock's value.  According to the Company's SEC filings, in 2017, Guinn received total compensation of $465,647.  This amount is material to him.

103.     For these reasons, demand upon defendant Guinn is futile.

**E.     Defendant van Brauman Lacks Independence and is Not Disinterested**

104.     Like Croswell and Guinn, van Brauman is also a Zion executive in addition to being serving as a director.  He has been the Corporate Secretary and Treasurer since January 2012 and

Senior Vice President since June 2013.  Zion has conceded in its SEC filings that van Brauman is not an independent director of the Company.  The 2018 Proxy states that van Brauman is not independent under the applicable SEC rules and regulations and the Nasdaq Stock Market listing requirements and rules.

105.    van Brauman received $3921,375 in total compensation from Zion in 2017.  This amount is material to him.  He also owned stock that was worth over $1.9 million prior to the stock drop and had an interest in keeping the SEC Investigation a secret to attempt to inflate that stock's value.

106.    For these reasons, demand upon defendant van Brauman is futile.

**F.      Defendant Avery Lacks Independence and is Not Disinterested**

107.    Like defendants Croswell, Brown, Guinn, and van Brauman, defendant Avery is paid by the Company for services in addition to serving as a director, compromising his independence.  Avery has been retained by the Company as General Counsel since December 2012.  For his services, he received $323,687 in total compensation from the Company in 2017.  This amount is material to him.

108.    Avery also owned stock that was worth over $3 million prior to the stock drop and had an interest in keeping the SEC Investigation a secret to attempt to inflate that stock's value.

109.    For these reasons, demand upon defendant Avery is futile.

**G.      Defendant Russell Lacks Independence and is Not Disinterested**

110.    Like defendants Croswell, Brown, Guinn, van Brauman, and Avery, defendant Russell is paid by the Company for services in addition to serving as a director, compromising his independence.  Russell has been an independent Geoscience Consultant for Zion since August 2012, far longer than he has been a member of the Board.  For his services, he received $253,638 in total compensation from the Company in 2017.  This amount is material to him.

111.    Russell also owned stock that was worth over $1.3 million prior to the stock drop and had an interest in keeping the SEC Investigation a secret to attempt to inflate that stock's value.

112.    For these reasons, demand upon defendant Russell is futile.

## H.    Defendant Siegel Lacks Independence and is Not Disinterested

113.    Defendant Siegel has an extensive history with the Company.  Siegel was Zion's CFO and COO from July 9, 2010 until March 31, 2011.  Siegel served as a director of the Company from November 2003 until March 31, 2011, and again from December 2012 through the present.

114.    As a director almost since the Company's inception and a former officer of Zion, upon information and belief, Siegel has close relationships with the other members of the Board, as well as the Company's executives.  He is thus incapable of independently and fairly considering a demand for litigation against them.

115.    For this reason, demand upon defendant Siegel is futile.

## I.    Defendants Garb, Siegel, Oroian, and Scammahorn Are Not Disinterested Due to Large Holdings of Zion Stock

116.    Defendant Garb owned stock that was worth over $1.3 million prior to the stock drop and had an interest in keeping the SEC Investigation a secret to attempt to inflate that stock's value.

117.    Defendant Siegel owned stock that was worth over $1.2 million prior to the stock drop and had an interest in keeping the SEC Investigation a secret to attempt to inflate that stock's value.

118.    Defendant Oroian owned stock that was worth over $1.4 million prior to the stock drop and had an interest in keeping the SEC Investigation a secret to attempt to inflate that stock's value.

119.    Defendant Scammahorn owned stock that was worth over $1.1 million prior to the stock drop and had an interest in keeping the SEC Investigation a secret to attempt to inflate that stock's value.

120.    For these reasons, demand upon defendants Garb, Siegel, Oroian, and Scammahorn is futile.

**J.      Defendants Siegel, Oroian, and Scammahorn Face a Substantial Likelihood of Liability as Members of the Audit Committee**

121.    Defendants Siegel, Oroian, and Scammahorn, as members of the Audit Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements and repeated false and misleading statements to the investing public.  More specifically, as members of the Audit Committee, Siegel, Oroian, and Scammahorn were obligated to review the Company's annual and quarterly reports to ensure their accuracy.  Instead, Siegel, Oroian, and Scammahorn failed to ensure the integrity of the Company's financial statements and financial reporting process, the Company's systems of internal accounting and financial controls, and other financial information provided by the Company, as required by the Code.  For this reason, demand is futile as to Siegel, Oroian, and Scammahorn.

**K.      Defendants Garb and Siegel Face a Substantial Likelihood of Liability as Members of the Compensation Committee**

122.    Defendants Garb and Siegel, as members of the Compensation Committee during the Relevant Period, participated and knowingly approved the unjust enrichment of the Individual Defendants.  More specifically, as members of the Compensation Committee, Garb and Siegel were obligated to discharge the Board's responsibilities relating to compensation of the Company's executive officers and directors.  During the Relevant Period, Garb and Siegel awarded inflated incentive-based compensation to the Individual Defendants based on the inflated share price of Zion.  Because Garb and Siegel breached their fiduciary duties, there is a high likelihood

that they will be held personally liable in any action brought on behalf of the Company.  For this reason, demand is futile as to Garb and Siegel.

## L.      The Director Defendants are Not Independent

123.    In addition to the reasons stated above, none of the Director Defendants are independent due to their connection to defendant Brown.  Zion was founded and has always been run in accordance with defendant Brown's Vision of finding oil in Israel based on bible passages. Each of the Director Defendants supports Brown in his Vision above all else and cannot disinterestedly consider a demand against Brown or any of each other.

## M.      The Director Defendants are Not Disinterested

124.    If Zion's current officers and directors are protected against personal liability for their breaches of fiduciary duties alleged in this complaint by Directors & Officers Liability Insurance ("D&O Insurance"), they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders.  However, Plaintiffs are informed and believe that the D&O Insurance policies covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by Zion against the Individual Defendants, known as the "insured versus insured exclusion."

125.    As a result, if the Director Defendants were to sue themselves or certain of the officers of Zion, there would be no D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  Therefore, the Director Defendants cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O Insurance policy.

126.     Under the factual circumstances described herein, the Director Defendants are more interested in protecting themselves than they are in protecting Zion by prosecuting this action. Therefore, demand on Zion and its Board is futile and is excused.  Zion has been and will continue to be exposed to significant losses due to the Individual Defendants' wrongdoing.  Yet, the Director Defendants have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct.   Thus, the Director Defendants are breaching their fiduciary duties to the Company and face a sufficiently substantial likelihood of liability for their breaches, rendering any demand upon them futile.

## COUNT I

### Breach of Fiduciary Duty
### (Against the Individual Defendants)

127.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

128.     The Individual Defendants owed and owe Zion fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Zion the highest obligation of loyalty, good faith, due care, oversight, and candor.

129.     All of the Individual Defendants violated and breached their fiduciary duties of loyalty, good faith, due care, oversight, and candor.

130.     Each of the Individual Defendants had actual or constructive knowledge of and caused the Company to fail to disclose that:  (1) the Individual Defendants were aware that the Company was the subject of the SEC Investigation; (2) the Company failed to maintain adequate internal controls; and (3) as a result of the foregoing, the Company's statements about Zion's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.  These actions caused severe risks to the Company's financial viability and have

caused harm to the Company by subjecting it to the Securities Class Action.   The Individual

Defendants' actions (and inactions) could not have been a good faith exercise of prudent business

judgment to protect and promote the Company's corporate interests.

131.    The Individual Defendants consciously caused or allowed Zion to lack requisite

internal controls, and, as a result, the Company regularly made false and misleading statements.

132.    The Individual Defendants consciously failed to supervise, to exert internal controls

over, and consciously disregarded their responsibilities involving the Company.

133.    As a direct and proximate result of the Individual Defendants' conscious failure to

perform their fiduciary obligations, Zion has sustained significant damages.   As a result of the

misconduct alleged herein, the Individual Defendants are liable to the Company.   The Individual

Defendants breached their fiduciary duties owed to Zion and its stockholders by willfully,

consciously, and/or intentionally failing to perform their fiduciary duties.   They caused the

Company to waste valuable assets and unnecessarily expend corporate funds.   They also failed to

properly oversee Zion's business, rendering them personally liable to the Company.

## COUNT II

### For Unjust Enrichment
### (Against the Individual Defendants)

134.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs as if

fully set forth herein.

135.    By their wrongful acts, violations of law, and misleading statements and omissions

of material fact that they made and/or caused to be made, the Individual Defendants were unjustly

enriched at the expense and to the detriment of Zion.

136.    The Individual Defendants received incentive-based compensation from Zion that was tied to the performance or artificially-inflated valuation of Zion and/or received compensation that was unjust in light of their bad faith conduct.

137.    To remedy the Individual Defendants' unjust enrichment, the Court should order them to disgorge to the Company all proceeds, including from insider transactions, excessive compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

138.    Plaintiffs, on behalf of Zion, have no adequate remedy at law.

### COUNT III

### Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9
### (Against the Individual Defendants)

139.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

140.    The Section 14(a) Exchange Act claims alleged herein are based solely on negligence.  They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants.  The Section 14(a) Exchange Act claims alleged herein do not allege and do not sound in fraud.  Plaintiffs specifically disclaim any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these proxy law claims.

141.    Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or

which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

142.   The 2018 Proxy violated Section 14(a) and Rule 14a-9 because it solicited Zion stockholder votes for, *inter alia*, director re-election and ratification of MaloneBailey as the Company's independent public accounting firm, while simultaneously misrepresenting and/or failing to disclose the existence of the SEC Investigation.

143.   As alleged herein, in the 2018 Proxy, the Individual Defendants specifically referenced the Code, which includes special ethical obligations regarding financial reporting such that all SEC filings are to be accurate.  Because the Company, under the Individual Defendants' direction and on their watch, was issuing false and misleading statements, the Individual Defendants affirmatively violated the Code.  The Proxy failed to disclose that express terms of the Code were being violated.

144.   The Individual Defendants caused the Company to make untrue statements of material facts and omit material facts necessary to make the issued statements not misleading in violation of Section 14(a) and Rule 14a-9.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the 2018 Proxy, the Individual Defendants were aware of this information and of their duty to disclose this information in the 2018 Proxy.

145.   The Individual Defendants knew, or were negligent in not knowing, that the statements contained in the 2018 Proxy were materially false and misleading.

146.   The omissions and false and misleading statements in the 2018 Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the re-election of directors and the ratification of the Company's auditor.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of

information made available in the 2018 Proxy and in other information reasonably available to stockholders.

147.    As a direct and proximate result of the dissemination of the false and/or misleading 2018 Proxy the Individual Defendants used to obtain stockholder approval of and thereby re-elect directors and ratify MaloneBailey, Zion suffered damage and actual economic losses (*i.e.*, wrongful re-election of directors) in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.    Declaring that Plaintiffs may maintain this derivative action on behalf of Zion and that Plaintiffs are adequate representatives of the Company;

B.    Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and violations of the federal securities laws;

C.    Ordering the Individual Defendants to disgorge the profits obtained as a result of their unjust enrichment as described herein;

D.    Granting appropriate equitable relief to remedy the Individual Defendants' breaches of fiduciary duties and other violations of law;

E.    Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, and costs and expenses; and

F.    Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated:  November 21, 2018

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Marion Passmore
Melissa A. Fortunato
Shaelyn Gambino Morrison
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone:  (212) 308-5858
passmore@bespc.com
fortunato@bespc.com
gambino-morrison@bespc.com

**RIGRODSKY & LONG, P.A.**

*/s/ Brian D. Long*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone:  (302) 295-5310
Fax:  (302) 654-7530
Email: bdl@rl-legal.com
      gms@rl-legal.com